UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| BOYD A. RATHKE, | ) | CIV. 08-5084-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER REVERSING AND |
| vs. | ) | REMANDING DECISION OF |
| | ) | THE COMMISSIONER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the court pursuant to a complaint filed by plaintiff Boyd Rathke on November 4, 2008, appealing the denial of his application for disability insurance benefits and supplemental security income benefits by the Social Security Administration. (Docket 1). The Commissioner opposes Mr. Rathke's complaint and moves to dismiss it in its entirety. (Docket 10). The court referred this matter to the magistrate judge for a report and recommendation. (Docket 21). On January 27, 2010, the magistrate judge issued her report which recommended affirming the decision of the Commissioner. (Docket 22). Mr. Rathke timely filed objections to the report and recommendation. (Docket 25). The court has jurisdiction over this case pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), and the case is ripe for adjudication.

**FACTUAL AND PROCEDURAL HISTORY**[1]

The magistrate judge provided a thorough recitation of the factual and procedural history of this case. (Docket 22). Mr. Rathke did not object to this recitation *per se*, although he objects to the conclusions drawn therefrom. The court incorporates by reference the factual and procedural history set forth in the report and recommendation.

**DISCUSSION**

Mr. Rathke timely filed twelve specific objections to the report and recommendation. (Docket 25). The court reviews *de novo* those portions of the report and recommendation subject to objection. Thompson v. Nix, 897 F.2d 356, 357, 358 (8th Cir. 1990); 28 U.S.C. § 636(b)(1).

**A.    Objection No. 1, Standard of Review**

Mr. Rathke argues the report and recommendation omits three relevant standards and suggests an inappropriate standard. (Docket 25 at pp. 3-4). The court agrees with Mr. Rathke that (1) administrative hearings are non-adversarial and the ALJ "is charged with the duty of fully and fairly developing the facts of the case," Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002); (2) a reviewing court "must judge the propriety of . . . [agency] action solely by the grounds invoked by the agency" and not by post hoc rationalizations. Burlington Truck Lines v. United States, 371 U.S. 156, 168-

---

[1] The court shall cite to information in the administrative record by referencing "AR" and to information in the report and recommendation by referencing "RR," followed by the appropriate page number(s) where the information may be found.

2

69 (1962); and (3) a district court may not make findings of fact to supplement the ALJ's findings. Lewis v. Califano, 574 F.2d 452, 456 (8th Cir. 1978). Further, the court agrees with Mr. Rathke that, because an administrative hearing is not an adversarial hearing, the ALJ has a duty to develop the record fully and fairly even if the claimant is represented by counsel. Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002); Battles v. Shalala, 36 F.3d 43, 44 (8th Cir. 1994). Thus, objection no. 1 is sustained.

**B.    Objection No. 2, Structure of Sequential Evaluation**

Mr. Rathke objects to the magistrate judge's characterization of the five-step sequential analysis conducted by the ALJ. (Docket 25 at pp. 4-5). Specifically, Mr. Rathke argues the magistrate judge omitted the requirement at step three to consider the combined impairments of the claimant. Id. at p. 4. When providing a brief overview of the five-step analysis, the magistrate judge characterized step three as a determination of "whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience)." (RR 53). When discussing step three in more detail, however, the magistrate judge identified and discussed the correct standard, specifically stating "[i]f the claimant presents more than one impairment, the ALJ should consider the combined effect of the impairments." (RR 69). Citing the appropriate regulations, the magistrate judge also noted the ALJ must determine "whether any medically 'severe' impairment, by itself *or combined with other impairments*, meets or equals any of the listed

3

impairments that are so severe as to presumptively preclude substantial gainful activity." Id. (emphasis added).  Mr. Rathke's remaining objection regarding the substance abuse analysis is considered in relation to Mr. Rathke's objection no. 10.  Thus, objection no. 2 is overruled subject to further analysis in connection with objection no. 10.

**C.     Objection No. 3, Not Credible Due to Infrequent Doctor Visits**

The magistrate judge affirmed the ALJ's adverse credibility determination as to Mr. Rathke based in part on his infrequent doctor visits.  (RR 78-81). Mr. Rathke objects to the magistrate judge's finding and has provided, as an appendix, a summary of all the visits Mr. Rathke made to Dr. Joy Falkenburg from 2003 to 2006.  (Docket 25 at pp. 5-7 and Appendix).  The record shows Mr. Rathke visited Dr. Falkeburg sixteen times over a period of approximately 33 months.  See Docket 25, Appendix.  This record belies the assertion that Mr. Rathke's visits to the doctor were infrequent.  The court also is troubled by the lack of information in the record as to Mr. Rathke's indigent status.  On a progress note from the Edgemont Memorial Clinic dated July 15, 2005, the notation appears, "No more Medicaid."  (AR 700).  The ALJ cited to the infrequency of doctor visits and infrequency of treatment as grounds for discrediting Mr. Rathke's subjective complaints.  (AR 37).  Yet, the ALJ failed to discuss the affect of Mr. Rathke's indigency on his ability to visit the doctor and seek and obtain treatment.  "[A] lack of sufficient financial resources to follow prescribed treatment to remedy a disabling impairment may be . . . an independent basis for finding justifiable cause for noncompliance."  Tome v.

4

Schweiker, 724 F.2d 711, 714 (8th Cir. 1984). The record is inadequate to determine if justifiable cause exists for any alleged noncompliance with treatment. Accordingly, objection no. 3 is sustained, and the case is remanded to the ALJ to develop the record with respect to this issue.

**D.     Objection No. 4, Relevance of Marijuana Use to Credibility**

The ALJ impliedly found not credible Mr. Rathke's assertion that he smoked marijuana daily to increase his appetite and maintain his weight. (AR 37). Mr. Rathke alleges his daily use of marijuana has kept his weight relatively stable since the age of 18. (RR 77). Because Mr. Rathke has used marijuana for most of his adult life, there is nothing in the record to indicate what his weight would be without the use of marijuana. Without this comparative information, Mr. Rathke's assertion that marijuana helps maintain his weight is no less credible than the ALJ's implied assertion that Mr. Rathke can maintain his weight without marijuana. Thus, objection no. 4 is sustained.

**E.     Objection No. 5, Relevance of Medicaid Eligibility to Credibility**

As discussed previously, see section C, *supra*, the court finds the ALJ improperly failed to consider Mr. Rathke's indigency when discrediting his credibility. Accordingly, objection no. 5 is sustained, and the case is remanded to the ALJ to develop the record with respect to this issue.

**F.     Objection No. 6, Decision Not to Treat Hepatitis C**

Mr. Rathke objects to the finding that he failed to follow prescribed treatment for Hepatitis C without good cause. (Docket 25 at pp. 10-11). The

5

ALJ found this alleged failure undermined Mr. Rathke's credibility as to the disabling effects of Hepatitis C. (AR 37). The ALJ's determination does not reflect the record accurately. Several possible reasons appear in the record to justify Mr. Rathke's non-treatment of Hepatitis C.

Progress notes from the Edgemont Memorial Clinic dated September 2, 2003, contain the notation, "He states he is not an Interferon candidate because he is on chronic [anti]depressant and the risk for suicide is too high." (AR 621). Progress notes dated September 30, 2003, include the notation, "Hepatitis C. The patient is not a good candidate for Interferon as he has had suicidal ideation in the past. He has seen a GI specialist in the past and they did not think he was a good candidate." (AR 619). Progress notes dated January 16, 2004, include the notation, "On his other medical problems his chronic Hepatitis C, they told him that he was not a candidate for treatment, so the patient does not want treated for that; therefore, I am not going to refer him for treatment." (AR 668). Progress notes dated December 17, 2004, include the notation, "He comes in for a followup of some chronic medical conditions including Hep C, which he is not receiving any therapy for. He has had major depression in the past and therefore is not a good candidate for Interferon. He also does not want chronic treatment for Hep C." (AR 705). Progress notes dated March 25, 2005, include the notation, "The patient has hepatitis C. He is not a candidate for interferon therapy. We've gone over this extensively in the past." (AR 703). Progress notes dated October 14, 2005, include the notation, "Hep C, liver disease, unknown staging because patient doesn't get

6

follow through care and has not had liver biopsies.  He is not a candidate for Interferon, because of no payment and also because of chronic Schizophrenia and depression." (AR 697).  Progress notes dated April 21, 2006, include the notation, "he is not a good candidate for interferon therapy because of his severe psychiatric history.  Again, he does not want to go through and do this interferon therapy either.  He knows that this will eventually result in liver failure and death.  He says that he understands that and still wants to stay the course." (AR 691).  A letter from Dr. Falkenburg dated May 6, 2008, stated, "The patient is very impoverished.  He cannot afford any type of medical care for his hepatitis C."  (AR 728).

The court acknowledges the observation made by Dr. Greg Erickson on January 20, 2004, that Mr. Rathke was "not a candidate for interferon with history of non-compliance and substance abuse." (AR 494-95; RR 74). However, this observation does not suggest Mr. Rathke *refused* treatment because of his substance abuse.  The court also acknowledges the following observations made by Dr. Sujoy Ghorai on November 1, 2002:

> Buck, his girlfriend, Teri, and I had a 20 minute discussion regarding chronic hepatitis C infection.  We discussed the natural history course, prognosis, and therapeutic options in quite some detail.  I discussed the evaluation which included liver tests and possible liver biopsy if he decided he would want to consider treatment.  We also discussed the fact that he would need to abstain from alcohol completely for six months prior to considering therapy.  I would also like to see him stop marijuana.  I informed him we can track the use of these substances with urine tests. He seemed to understand . . . . We went over the treatment with PEG-Interferon and Ribavirin.  We also went over the side effects in quite some detail.  After listening to this, Buck is not quite sure what he wants to do.  He would like to think about things for awhile.  I will provide him with literature as well.

7

(AR 503; RR 74-75). Again, this observation does not indicate Mr. Rathke *refused* treatment because he was unwilling to abstain from alcohol and marijuana. Rather, one could logically conclude Mr. Rathke needed time to decide if the risks and potential side effects of treatment outweighed the benefits.

Substantial evidence in the record simply does not support the ALJ's conclusion that Mr. Rathke "would rather allege he is disabled due to pain [from Hepatitis C] but yet not seek any treatment for his alleged pain." (AR 37). It is unclear whether Mr. Rathke went without treatment because he was told he was not a good candidate for treatment, he could not afford it, or he was concerned about potential side effects. It is possible Mr. Rathke refused treatment because he was unwilling to forgo alcohol and marijuana; however, substantial evidence in the record does not support such a conclusion. A claimant who does not follow prescribed treatment "without a good reason" will be considered not disabled. 20 C.F.R. § 416.930. In this case, the record must be developed further to determine if Mr. Rathke had such a "good reason." Accordingly, objection no. 6 is sustained, and the case is remanded to the ALJ to develop the record with respect to this issue.

**G.   Objection No. 7, Failure to Consider Combined Pain and Mental Impairment at Step Three**

Mr. Rathke argues the ALJ, at step three, failed to consider the combined effect of his pain and mental impairments. (Docket 25 at pp. 12-15). The ALJ found Mr. Rathke's chronic pain syndrome to be not severe and discredited his

8

subjective complaints of pain. (AR 34, 36). To determine whether the ALJ erred at step three requires an analysis of whether the ALJ improperly discounted Mr. Rathke's subjective complaints of disabling pain. In light of the court's determination that remand is necessary, the court reserves ruling on this issue until the ALJ provides a new opinion.

**H.    Objection No. 8, Weight Assigned to Medical Evidence**

In light of the court's determination that remand is appropriate, the court reserves ruling on this issue until the ALJ provides a new opinion.

**I.    Objection No. 9, Failure to Provide Rationale to Reject Opinion that Rathke Could Perform Simple Repetitive Tasks Four Hours a Day**

Mr. Rathke argues the ALJ failed to consider the opinion of psychiatrist Dr. Tobias Dang, who opined Mr. Rathke could work only for "a limited amount of time like four hours per day." (Docket 25 at p. 23; AR 606). The ALJ noted Dr. Dang's opinion, but did not explicitly credit or discredit it. (AR 39). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). "Given the ALJ's specific references" to Dr. Dang's findings, "it is highly unlikely that the ALJ did not consider and reject" Dr. Dang's conclusion regarding the total number of hours Mr. Rathke could work per day. See id. However, given this case is remanded for further proceedings, objection no. 9 is sustained, and the ALJ is directed to provide a rationale for discrediting Dr. Dang's opinion. The court reserves ruling on the *appropriateness* of discrediting Dr. Dang's opinion until the ALJ issues a new opinion.

9

**J.     Objection No. 10, Failure to Comply with Adjudicatory Procedure Required When Substance Abuse is Present**

Mr. Rathke argues the ALJ failed to follow the prescribed sequence for adjudicating a claim where substance addiction is found to be an impairment.[2] (Docket 25 at pp. 24-25).  The court agrees.  In <u>Brueggemann v. Barnhart</u>, 348 F.3d 689 (8th Cir. 2003), the Court of Appeals for the Eighth Circuit outlined the procedure for considering substance use disorders in disability determination proceedings in accordance with 20 C.F.R. § 404.1535.  <u>Id.</u> at 693.  An ALJ must first determine whether the claimant is disabled.  <u>Id.</u> at 694.  "The ALJ must reach this determination initially . . . using the standard five-step approach . . . without segregating out any effects that might be due to substance use disorders."  <u>Id.</u> (citations omitted).  "The ALJ must base this disability determination on substantial evidence of [the claimant's] medical limitations without deductions for the assumed effects of substance use disorders."  <u>Id.</u>  If an ALJ determines, based on the "gross total of a claimant's limitations, including the effects of substance abuse disorders," that the claimant is disabled, "then the ALJ must next consider which limitations would remain when the effects of the substance abuse disorders are absent."  <u>Id.</u> at 694-95 (citations omitted).

Here, the ALJ, *at step three*, relied in large part on Dr. Michael Enright's opinion regarding Mr. Rathke's functional limitations.  (AR 35-36).  However, as

---

[2] At step two of the five-step analysis, the ALJ found Mr. Rathke suffered from, in part, a substance addiction disorder considered to be severe under the Social Security Regulations.  (AR 33).

noted by the ALJ, Dr. Enright formed his opinion without consideration of Mr. Rathke's substance addiction disorder.  Id.  The ALJ indicated he accorded "substantial weight" to Dr. Enright's opinion.  (AR 39).  Thus, the ALJ reached the disability determination by relying, in part, on an opinion which explicitly did not consider Mr. Rathke's substance abuse disorder.  To have done so contravenes the procedure outlined in Brueggemann.  Accordingly, objection no. 10 is sustained, and the case is remanded to the ALJ in light of Brueggemann.

**K.     Objection No. 11, The June 2005 Notice of Denial of SSD was Sufficient to Establish an "Open" Unadjudicated Claim**

Mr. Rathke argues the June 18, 2005, denial notice essentially revived his closed claim for Title II benefits.  (Docket 25 at pp. 25-26).  Mr. Rathke argues delivery of the 2005 notice restarted the appeal period.  Id.  Even if the court assumes this is true, the issue is moot as there is no evidence in the record that Mr. Rathke attempted to file an appeal after receiving this notice. The magistrate judge provided a thorough analysis of the timeliness of Mr. Rathke's applications for Title II benefits.  The court overrules Mr. Rathke's objections and adopts the magistrate judge's findings with respect to this issue.

**L.     Objection No. 12, Items Noted but Not Discussed**

In light of the court's determination that remand is appropriate, the court reserves ruling on this issue until the ALJ provides a new opinion.

## CONCLUSION

In accordance with the above discussion, it is hereby

ORDERED that the magistrate judge's report and recommendation (Docket 22) is adopted in part and rejected in part.

IT IS FURTHER ORDERED that plaintiff's objections (Docket 25) are sustained in part, overruled in part, and reserved in part for ruling.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and the case remanded to the Commissioner for further administrative action. Upon remand, the ALJ shall further develop the record and issue a new decision.

IT IS FURTHER ORDERED that, in accordance with Fed. R. Civ. P. 58, the Clerk of Courts shall enter judgment in favor of plaintiff Boyd A. Rathke and against defendant Michael J. Astrue, Commissioner of Social Security.

Dated March 26, 2010.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE